PEOPLE ex rel. BARNARD COLLEGE v. WELLS. **13**

Misc.]                  Supreme Court, December, 1904.

reau of buildings were in fact incompetent. If it appeared from the complaint that the defendant Hopper had knowingly appointed incompetent subordinates, and had knowingly permitted the building to be constructed in an unsafe manner and in violation of law, then a different case would be presented, but, as the complaint stands, there is no fact alleged indicating any personal negligence whatever on the part of the defendant Hopper, and he is, therefore, not liable to the plaintiff. Donovan v. McAlpin, 85 N. Y. 185. The demurrers should, therefore, be sustained, with costs, with leave to the plaintiff to serve an amended complaint within twenty days on payment of costs.

Demurrer sustained with costs, with leave to plaintiff to serve amended complaint within twenty days upon payment of costs.

---

THE PEOPLE ex rel. BARNARD COLLEGE, Relator, v. JAMES L. WELLS et al., Respondents.*

(Supreme Court, New York Special Term, December, 1904.)

**Exemption from taxation cannot be asserted when title acquired after tax books are closed.**

> A corporation entitled to exemption from taxation cannot claim said exemption as to real estate, the legal title to which it acquires after the tax books are closed, even though the tax has not yet ripened into a lien and the corporation, before the closing of the books, held an equitable interest therein under a contract of purchase.

MOTION to quash or supersede a writ of certiorari.

S. B. Brownell, for relator.

John J. Delany, Corporation Counsel (George S. Coleman and E. Crosby Kindleberger, of counsel), for respondents.

LEVENTRITT, J. This is a motion to quash or supersede a writ of certiorari. There is no dispute as to the facts and the question of law is precisely limited. It is whether a

---

\* Affd. without opinion, 92 App. Div. 622; 179 N. Y. 524.

14  PEOPLE ex rel. BARNARD COLLEGE v. WELLS.

Supreme Court, December, 1904.        [Vol. 46.

corporation whose property is exempt from taxation takes real estate free from the burden of the tax where it acquires title after the tax-books are closed but before the tax has ripened into a lien.   The tax involved is that for the year 1903.   On January 12, 1903, being the second Monday, the books containing the annual record of the assessed valuation of real estate were opened for examination, so to remain under the law until April first, when they were closed.   On January twenty-eighth Mrs. Elizabeth M. Anderson offered to purchase for the relator the property in question provided it could be secured for a stated sum.   Negotiations were had which resulted on March fifth in the execution of a contract for the purchase of the property whereby a part of the price was then paid and provision made for the transfer of title and the payment of the balance on April fourteenth.   The time for closing was subsequently extended to April eighteenth, when the transaction was consummated, Mrs. Anderson first taking title and then deeding the property to the relator for certain specified college purposes.   On July sixth, being the first Monday, the board of taxes and assessments delivered the assessment-rolls to the board of aldermen, showing the assessed valuation of the relator's recently-acquired property as it had been fixed on the second Monday in January.   The municipal assembly thereupon set down in the column provided therefor the amount of the tax and before September fifteenth delivered the roll with warrant to the receiver of taxes.   On October 5, 1903, the tax, pursuant to law, became a lien on the relator's land.   On October twenty-seventh the present writ was issued, the alleged ground of illegality being that the premises are exempt from taxation. It will be noted that when the books were opened neither the relator nor Mrs. Anderson had any title, legal or equitable, and that the legal title vested in the relator only after April first, when the books had been closed.   I do not think we are much concerned with the equitable interest acquired by the execution of the contract of purchase on March fifth, for taxation is directed against the legal title.   Cooley Taxn. (2d ed.) 731.   It has been uniformly held in this State that the taxable status of property is determined by its condition

PEOPLE ex rel. BARNARD COLLEGE v. WELLS.   **15**

Misc.]                Supreme Court, December, 1904.

on the second Monday of January, and that whatever changes
occur subsequent to that time do not authorize the commis-
sioners to do anything more than to revise the valuation.
" There must be some fixed period during the progress of
this taxation at which it can be determined as to whether
property is taxable or not taxable." Sisters of St. Francis v.
Mayor, 51 Hun, 356; affd. on opinion below, 112 N. Y.
677. That was a case of the transfer of title between the
time of the opening of the books in January and the closing
in May under the Consolidation Act then in force, and it
was held that the property was not entitled to the exemption.
The present case is stronger if anything, as title was ac-
quired after the closing of the books. In the case cited a
concession on behalf of the respondents that had the transfer
taken place after the closing of the books the exemption would
not attach, is accepted as sound law. The principles enunci-
ated in Sisters of St. Francis case are reaffirmed in Ætna
Ins. Co. v. Mayor, 153 N. Y. 331, 338. The relator relies
on the recent case of Buckhout v. City of New York, 176
N. Y. 363, decided in November of this year. A care-
ful reading of that authority fails to show any change in
the law so far as here applicable. That case involved a tax
for the year 1897 on lands condemned by the city. The first
steps had been taken in November of the preceding year. In
February, 1897, after the tax-books had been opened, a reso-
lution was adopted pursuant to law providing that title
should vest in the city on July 6, 1897. The local taxes
were confirmed on August 24, 1897, and the commissioners'
award was confirmed on December 23, 1897. The city
claimed the right to offset the amount of the tax against a
proportionate amount of the award. The Court of Appeals
held that this could not be done. Even though the books were
closed when the city acquired title the act of condemnation
arrested its power to complete the tax. The city, which was
the taxing power, having taken the property to itself before
the tax became a lien, could not thereafter enforce it as a debt.
The theory underlying the decision has no reference to the
ordinary transactions between private parties, but rests on the
idea that the city acting in the dual capacity of purchaser and
taxing power could not continue to act in the latter capacity

Supreme Court, December, 1904. [Vol. 46.

after it had perfected its status in the former. No question of exemption was involved. It was simply a case of arrest of power. The proceedings up to that point were perfectly valid. But by its own act the city was declared impotent to take any further steps. " It (the city) cannot commence proceedings to tax, then take away the property, and after that complete the process of taxation. * * * The power of taxation by the city ceased when the power of eminent domain destroyed private ownership and turned the property over to the city. It was the act of the city. itself in condemning the property which brought about this result, for if the appropriation had been by a railroad company, it would have had no effect upon the right to mature and collect the tax." Page 370. That the Buckhout case can have no applicability to that at bar appears plainly from other portions of the opinion, where the court emphasize the fact that it was not the case of a sale by one citizen to another citizen, a transaction which " would not arrest action by the city to mature the tax." The decision of this motion can well be rested on the following language in the Buckhout case, expressive of the settled law of this State: " Grants of property voluntarily made, after it has been listed and valued, but before the tax is confirmed and completed, do not concern the city nor prevent it from taking the course of procedure prescribed by statute." The motion to quash the writ is granted.

Motion granted.